UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE L. IVES,

        Petitioner,

v.

KENNETH ROMANOWSKI,

        Respondent.
_____/

CASE NO. 04-40053
HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Terrance L. Ives has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. He challenges his state convictions for assault with intent to commit murder and possession of a firearm during the commission of a felony (felony firearm). The Court finds no merit in Petitioner's claims. Therefore, the habeas petition will be denied.

**I. Background**

Petitioner was charged in Montmorency County, Michigan with attempted murder, kidnapping, possession of a short-barreled shotgun, and felony firearm. These charges arose from an incident on November 9, 2000, when Petitioner allegedly went to his estranged wife's home with a shotgun and threatened to kill her.

The trial court quashed the kidnapping count, and the prosecutor amended the first count to charge Petitioner with assault with intent to commit murder. On September 17, 2001, Petitioner pleaded guilty, but mentally ill, to assault with intent to murder, MCL 750.83, and felony firearm, MCL 750.227b. In return, the prosecutor dismissed the count

charging Petitioner with possession of a short-barreled shotgun. The parties agreed that the sentence for assault with intent to commit murder would be a term of years. On March 18, 2002, the trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of fifteen to thirty years for the assault conviction.

Petitioner applied for appointment of appellate counsel, but the trial court denied his application because, at the time, state law did not permit courts to appoint counsel for defendants who pleaded guilty. Petitioner did not appeal his convictions *in propria persona*, but on March 27, 2003, he moved to withdraw his plea. A month later, he moved to strike his motion to withdraw the plea.

On July 11, 2003, Petitioner filed a second application for appointment of appellate counsel. His application relied on *Tesmer v. Granholm*, 333 F.3d 683 (6th Cir. 2003) (*en banc*), *reversed on standing by Kowalski v. Tesmer*, 543 U.S. 125 (2004). The Sixth Circuit held in *Tesmer* that the statute and practice of denying appointment of counsel to defendants who plead guilty is unconstitutional. The trial court denied Petitioner's application for appointment of appellate counsel. Petitioner appealed the trial court's decision to the Michigan Court of Appeals, which dismissed his appeal as defective. *See People v. Ives*, No. 251818 (Mich. Ct. App. Dec. 4, 2003).

On February 20, 2004, Petitioner filed his habeas corpus petition in this Court, alleging that he had been denied his constitutional rights to due process, equal protection of the law, and effective assistance of counsel. Petitioner subsequently asked the Court to dismiss his habeas petition without prejudice in order to exhaust state remedies for his claims. Respondent concurred in Petitioner's request, and on October 27, 2004, the Honorable Paul V. Gadola stayed the habeas petition and closed the case for

administrative purposes. Petitioner then filed a motion for relief from judgment in the trial court, which denied the motion on procedural grounds. The Michigan Court of Appeals dismissed Petitioner's appeal from the trial court's decision for lack of jurisdiction. *See People v. Ives*, No. 260379 (Mich. Ct. App. Mar. 17, 2005).

Petitioner then applied for leave to appeal in the Michigan Supreme Court. While his application was pending, he filed an amended habeas corpus petition in this Court and a motion to bypass the state supreme court proceedings. Judge Gadola granted Petitioner's motion, directed the Clerk of Court to re-open this case, and ordered Respondent to file an answer to the amended habeas petition. Respondent filed an answer in opposition to the habeas petition. On June 23, 2008, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *See People v. Ives*, 481 Mich. 909; 750 N.W.2d 175 (2008).[1] On September 4, 2008, Petitioner's case was reassigned from Judge Gadola to this Court.

## II. Petitioner's Claims and the Standard of Review

Petitioner's amended habeas petition reads:

I. Petitioner Terrance L. Ives can establish "cause" and "prejudice" where the time for filing an application for leave to appeal to the state court of appeals may have expired because he was deprived of the assistance of counsel and the records and transcripts needed to perfect such an application despite repeated requests for same.

II. Petitioner Terry Ives was denied due process and equal protection of law under the Fourteenth Amendment to the United States Constitution when the court refused his request to appoint an attorney to assist him in preparing his application for leave to appeal to the state court of appeals after his

---

[1] Justice Marilyn Kelly voted to grant leave to appeal.

>   sentence when he had no funds to retain his own lawyer.
>
> III. Petitioner Terry Ives was deprived of his constitutional right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution when his appointed attorney failed to interview defense witnesses and investigate his prospective defense; threatened and coerced him into pleading guilty but mentally ill, and refused to move the trial court to withdraw his plea.
>
> IV. Petitioner Terrance L. Ives was denied his constitutional right to due process of law under the Fourteenth Amendment to the United States Constitution when his plea-taking judge did not assure that Mr. Ives' plea was voluntarily and understandingly made by advising him that in pleading guilty he gave up his right to have his guilt proven beyond a reasonable doubt; whether anyone had promised anything beyond what is in the plea agreement and whether it was his choice to plead guilty.

Habeas petitioners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits–

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. However, when, as here, no state court evaluated the merits of a habeas petitioner's federal claims, the deferential standard of 28 U.S.C. § 2254(d) does not apply, and review is *de novo*. *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

### III.  Discussion

#### A.  Procedural Default; "Cause and Prejudice"

Respondent asserts that Petitioner's claims are barred from review because the Michigan Court of Appeals dismissed his appeal for lack of jurisdiction. Petitioner asserts in Claim I that the State's failure to provide him with either appellate counsel or his trial court transcripts constituted "cause" for any procedural default that arose.

Because Petitioner's substantive claims lack merit, the Court need not address any procedural-default issue before deciding against the petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Accordingly, the Court will excuse the alleged procedural default and proceed to address Petitioner's substantive claims.

#### B.  Failure to Appoint Appellate Counsel

Petitioner alleges that he was denied due process and equal protection of the law when the trial court refused to appoint an attorney to represent him on direct appeal to the Michigan Court of Appeals. At the time of Petitioner's plea in 2001, state law provided that

defendants who pleaded guilty were not entitled to the appointment of appellate counsel. *See* MCL 770.3a (2000). The United States Court of Appeals for the Sixth Circuit determined in 2003, that this statutory provision was unconstitutional, *see Tesmer*, 333 F.3d at 688, and in 2005, the Supreme Court held that the Constitution requires appointment of counsel for defendants who plead guilty, but wish to appeal their convictions to the Michigan Court of Appeals. *See Halbert v. Michigan*, 545 U.S. 605, 610 (2005).

Petitioner's convictions became final no later than March or April of 2003,[2] and *Halbert* was decided in 2005. *Halbert* does not apply retroactively on federal habeas corpus review. *Simmons v. Kapture*, 516 F.3d 450 (6th Cir. 2008). Therefore, Petitioner is not entitled to relief on the ground that he was denied appointment of counsel to assist him in pursuing a direct appeal.

### C. Trial Counsel

The third habeas claim alleges that Petitioner's trial attorney deprived Petitioner of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, Petitioner contends that his attorney (1)

---

[2] "A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (citing *Griffith v. Kentucky,* 479 U.S. 314, 321, n. 6 (1987)). In Michigan, a defendant normally has one year from the entry of the final judgment in a criminal case to file an application for leave to appeal in the Michigan Court of Appeals. MCR 7.205(F)(3)(a).

Petitioner was sentenced on March 18, 2002, but he did not file an appeal within one year of his sentence or even within one year of April 11, 2002, the date that the trial court denied his first application for appointment of counsel. Although he filed a motion to withdraw his guilty plea on March 27, 2003, he later withdrew the motion. The trial court, moreover, determined in an order dated August 14, 2003, that Petitioner's motion was not filed within the time for filing an appeal. The Court therefore believes that Petitioner's conviction became final, for lack of a timely appeal, sometime before March 27, 2003, and certainly no later than April 11, 2003, which was one year from the denial of his application for appointment of counsel.

6

failed to interview defense witnesses and investigate his prospective defense, (2) threatened and coerced him into pleading guilty but mentally ill, and (3) refused to file a motion to withdraw his guilty plea.

To prevail on his claim, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In guilty plea cases, the "performance" prong requires showing that defense counsel's representation fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases. *Id.* at 687-88; *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Tollett v. Henderson*, 411 U.S. 258, 266 (1973). The "prejudice" prong requires demonstrating that defense counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In order to prevail, Petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

### 1. Advice regarding Potential Defenses

Petitioner alleges that his guilty plea was involuntary. He argues it was coerced by defense counsel's failure to investigate a defense and counsel's comments that Petitioner had no defense and would be convicted if he went to trial. Petitioner maintains that he had a potential defense: that he intended to kill himself, not his wife. He states that his sister and his marriage counselor would have testified in his behalf. Petitioner contends that his sister would have testified that his intent was to make his wife suffer by killing himself and that he had wanted his wife to take the gun from him and put him out of his misery. The marriage counselor, who was present while Petitioner held his wife hostage on November

9, 2000, would have testified that she (the counselor) was concerned about Petitioner harming himself, not his wife. Petitioner contends that the testimony of his sister and his marriage counselor would have raised a reasonable doubt about his intent to kill his wife.

While a plea may not be induced "by mental coercion overbearing the defendant's will", *Brady v. United States*, 397 U.S. 742, 750 (1970), whether defense counsel's advice to Petitioner prejudiced his case depends on whether Petitioner's potential defense would have succeeded at trial. *See Hill*, 474 U.S. at 59. Given the facts of record, there is no indication that Petitioner's defense would have been successful at trial.

Petitioner's wife, Diane Ives, testified at the preliminary examination that Petitioner came to her home with a shotgun. He walked in uninvited, aimed the gun at her face, and said that he was going to blow off her head. She fell onto the stairwell and pushed the barrel of the gun away from her. She smelled gunpowder and thought that the gun discharged, but she was not sure when that happened. She managed to get away from Petitioner and go outside, but he dragged her back into the house. She escaped a second time and ran to her bedroom, but Petitioner pushed his way into the bedroom. He threw her onto the floor, placed the barrel of the gun on her abdomen, and repeatedly stated that he was going to kill her. When the police arrived, Petitioner told her to say that everything was alright, but he continued to hold the gun on her as the police officers passed cigarettes, a telephone, and other items into the bedroom. Petitioner called two people from the bedroom and told them that he was going to kill himself and his wife. The police eventually convinced Petitioner to put down the gun, and Ms. Ives then ran out of the bedroom. She estimated that Petitioner threatened to kill her about twenty times that night.

Sergeant Donald Edwards testified at the preliminary examination that he was

dispatched to the Ives' home. When he arrived at the house, he heard a male voice threatening to kill a woman, who repeatedly said, "Please don't do it." Sergeant Edwards corroborated much of Ms. Ives' testimony, including the fact that a gunshot blast occurred in the stairwell.

Petitioner alleges that his intent was to kill himself in front of his wife so that she would have to live with his death on her conscience. Even if he could have convinced the jury that he was suicidal, there was no evidence that he aimed the gun at himself. There was significant evidence, however, that he wanted to kill his wife. Indeed, Petitioner had a motive for wanting to kill his wife: She was dating another man.

The Court concludes that Petitioner's potential defense - that he intended to kill himself and not his wife - was not a viable defense. Therefore, defense counsel's advice that Petitioner had no defense and that he would be convicted following a trial did not amount to deficient performance and did not result in a coerced plea. Further, defense counsel's advice did not prejudice the outcome of the trial: the result would have been the same, whether The Court notes, moreover, that Petitioner denied being mistreated, threatened, or forced to plea guilty. (Tr. Sept. 17, 2001, at 18-19.)

### 2. Advice on the Sentence

Petitioner alleges next that defense counsel told him that he would receive a sentence of thirty-four to sixty-four years for the assault conviction if he went to trial and was convicted. Petitioner contends that he could not possibly have received a minimum sentence of thirty-four years, because the sentencing guidelines called for a minimum sentence of nine to fifteen years. Petitioner admits, however, that the trial court could have exceeded the sentencing guidelines. Moreover, the Supreme court has ruled that a guilty

9

plea is not compelled or invalid simply because it was motivated by a desire to accept the probability of a lesser penalty rather than face a wider range of possibilities ranging from acquittal to conviction and a higher penalty. *Brady*, 397 U.S. at 751.

Petitioner claims that defense counsel also lied to him when he stated that he would receive only nine years in prison for the assault conviction and an additional two years for the felony firearm conviction. Petitioner received a mandatory two-year sentence for the felony firearm conviction, but a minimum sentence of fifteen years in prison for the assault conviction. Even if defense counsel misadvised Petitioner on the likely sentence, the trial court correctly advised Petitioner at the plea that he faced a maximum sentence of any term of years on the assault charge and a consecutive term of two years for the firearm felony count. (Tr. Sept. 17, 2001, at 9.) "[]The state trial court's proper colloquy can be said to have cured any misunderstanding [Petitioner] may have had about the consequences of his plea." *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999).

### 3. Failure to Move to Withdraw the Plea

Petitioner's final claim about his trial attorney is that the attorney refused to file a motion to withdraw Petitioner's plea and falsely informed Petitioner that he could be charged with perjury if he decided to withdraw his plea. Although Petitioner may not have been charged with perjury for moving to withdraw his guilty plea, counsel acted reasonably by advising Petitioner not to withdraw his plea. Petitioner received a favorable deal by pleading guilty in that one of the charges against him was dropped and he was promised a term of years for the assault conviction. Furthermore, the evidence against him was overwhelming. Had he gone to trial and been convicted of assault with intent to commit murder, he could have received a maximum sentence of life imprisonment MCL 750.83.

In light of the risks Petitioner faced by going to trial, counsel was not ineffective for refusing to file a motion to withdraw the plea.

### 4.  Conclusion on Ineffectiveness Claim

Petitioner arguably has satisfied the prejudice prong of *Strickland* and *Hill* by stating that he might have insisted on a trial were it not for his attorney's pressure tactics. However, for above stated reasons, the Court believes that defense counsel's representation did not fall below an objective standard of reasonableness and was not outside the range of competence demanded of attorneys in criminal cases.  Therefore, Petitioner has failed to establish the performance prong of *Strickland* and *Lockhart*, and his ineffective-assistance-of-counsel claim fails.

### D.  The Plea

The fourth and final habeas claim alleges that Petitioner's plea was involuntary and unknowing because the trial court did not advise him that, in pleading guilty, he was waiving his right to have his guilt proven beyond a reasonable doubt.  Petitioner also alleges that the trial court failed to ascertain whether anyone had promised him anything beyond what was contained in the plea agreement and whether it was his choice to plead guilty.

A guilty plea constitutes a waiver of several constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  Consequently, a guilty plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748.  A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).  The defendant must be aware of the direct consequences

of the plea. *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991).

Petitioner's allegation that the trial court did not advise him that he was waiving his right to be proven guilty beyond a reasonable doubt is not supported by the record. The trial court stated at the plea that Petitioner was waiving his right to a trial and his right to be presumed innocent until such time as he was proven guilty by competent evidence beyond a reasonable doubt. When asked, Petitioner responded that he understood. (Tr. Sept. 17, 2001, at 14-15.)

Petitioner's additional allegation that the trial court failed to ascertain whether anyone had promised him anything beyond the contents of the plea agreement and whether it was his choice to plead guilty also is belied by the record. The trial court asked Petitioner whether the plea agreement, as set forth by his attorney, was the actual plea agreement as he understood it. Petitioner responded, "Yes, it is." *Id*. at 8. The trial court also asked Petitioner whether his plea was being entered freely and voluntarily. Petitioner responded that it was. *Id*. at 19.

Petitioner's claims have no basis in fact, and his "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Thus, he has no right to relief on the basis of his fourth and final habeas claim.

## IV. Conclusion

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

Accordingly, the amended habeas corpus petition [Dkt. 18] is **DENIED**.

12

Further, the Court **DECLINES** to grant a certificate of appealability, because reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner nevertheless may appeal this Court's decision without prepayment of the filing fee because he was granted *in forma pauperis* status in the District Court. Fed. R. App. P. 24(a)(3).

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 3, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 3, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager

13